IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN MADDEN, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1509 (LPS) |
| | ) | |
| ROTHY'S, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| ROTHY'S, INC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN MADDEN, LTD., and STEVEN MADDEN RETAIL, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**ROTHY'S, INC.'S AMENDED ANSWER
TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**

Rothy's, Inc. (hereinafter, "Rothy's"), by counsel, hereby submits its: (1) Amended Answer to the Second Amended Complaint against Rothy's, Inc. (hereinafter, "Second Amended Complaint"), filed by Plaintiff Steven Madden, Ltd. on November 4, 2019; and (2) Counterclaims against Steven Madden, Ltd., and Steven Madden Retail, Inc. (individually and collectively, "Madden").

**ROTHY'S AMENDED ANSWER TO THE SECOND AMENDED COMPLAINT**

Except as expressly admitted herein, Rothy's denies the allegations in the Second Amended Complaint.

The Second Amended Complaint contains section titles and other organizational headings to which no response is required. In responding to the Second Amended Complaint, Rothy's uses

the section titles and organizational headings employed by Madden strictly as a convenience to the Court, and does not admit any allegations made in, or any inference suggested by, such headings. To the extent any such section titles or other organizational headings in the Second Amended Complaint are construed to contain substantive allegations to which response is required, they are hereby denied.

To the extent Rothy's uses certain terms from the Second Amended Complaint in this response, such use is not an acknowledgment or admission of any characterization Madden seeks to associate with any such terms.

### NATURE OF THE ACTION

1.      Rothy's admits that Madden's claims purport to arise under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and the Lanham Act, 15 U.SC. §§ 1051, *et seq.*

2.      Paragraph 2 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's admits that an immediate, real, and justiciable controversy exists between Madden and Rothy's regarding Rothy's U.S. Patent Nos. D831,313 (the "'1,313 Patent"), D844,313 (the "'4,313 Patent"), and D831,325 (the "'325 Patent"), and that an immediate, real, and justiciable controversy exists between Madden and Rothy's regarding Madden's infringement of the Lanham Act with respect to Rothy's trade dress in and to Rothy's The Point shoe model (hereinafter, "The Point"). Rothy's denies the remaining allegations contained in Paragraph 2 of the Second Amended Complaint, including Madden's characterization of Rothy's prior communications as "threats."

3.      Rothy's admits that Exhibits A-C of the Second Amended Complaint purport to represent true and correct copies of U.S. Design Patent Nos. D831,325, D844,313, and D831,313; admits that Rothy's has alleged that Madden has infringed the '1,313 Patent, the

'4,313 Patent, and the '325 Patent by its sale of the Steven by Steve Madden Rosy Flat (the "Rosy Flat"); and admits that it holds protectable trade dress in and to The Point. Rothy's otherwise denies the remaining allegations contained in Paragraph 3 of the Second Amended Complaint.

4.    Rothy's denies the allegations contained in Paragraph 4 of the Second Amended Complaint.

5.    Rothy's denies the allegations contained in Paragraph 5 of the Second Amended Complaint, and avers that it has virtually marked The Point with the '1,313 Patent, the '4,313 Patent, and the '325 Patent on its website at https://rothys.com/patents.

6.    Rothy's admits that it has no federal trademark registration in its trade dress in and to The Point, and avers that the remaining allegations of Paragraph 6 of the Second Amended Complaint are conclusions of law to which no response is required. To the extent a response to the remaining allegations is required, Rothy's otherwise denies the remaining allegations contained in Paragraph 6 of the Second Amended Complaint.

7.    Rothy's denies the allegations contained in Paragraph 7 of the Second Amended Complaint.

8.    Rothy's denies the allegations contained in Paragraph 8 of the Second Amended Complaint.

9.    Rothy's admits that it has brought lawsuits against JKM Technologies, LLC and Giesswein Walkwaren AG. Rothy's otherwise denies the remaining allegations contained in Paragraph 9 of the Second Amended Complaint, and avers that it has not previously asserted a trade dress in and to The Point in any lawsuits.

10.     Paragraph 10 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 10 of the Second Amended Complaint.

11.     Rothy's admits that it is seeking an injunction to prevent current and future sales of the Rosy Flat, but otherwise denies the allegations contained in Paragraph 11 of the Second Amended Complaint.

12.     Rothy's admits the allegations contained in Paragraph 12 of the Second Amended Complaint to the extent they describe the relief sought by Madden, but denies that Madden is entitled to any of the relief sought.

## THE PARTIES

13.     On information and belief, Rothy's admits the allegations contained in Paragraph 13 of the Second Amended Complaint.

14.     Admitted.

## JURISDICTION AND VENUE

15.     Rothy's admits that Madden's claims purport to arise under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and that Madden seeks relief based upon the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, but otherwise denies any remaining allegations set forth in Paragraph 15 of the Second Amended Complaint.

16.     Rothy's admits that it is incorporated in Delaware, and that this Court has personal jurisdiction over Rothy's for the purposes of this action, but otherwise denies the allegations contained in Paragraph 16 of the Second Amended Complaint.

17.     Paragraph 17 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's admits that venue is proper in this District for the purposes of this action.

18.     Rothy's admits that on August 2, 2019, Rothy's sent a letter via FedEx and email to Madden (the "August 2 Letter"), regarding deliberate acts of copying, which Madden has not denied, and infringement and dilution of Rothy's trade dress in The Point, as well as infringement of Rothy's '1,313, '4,313, and '325 Patents. Rothy's also admits that it has sent letters to third parties other than Madden that it determined to have infringed its intellectual property rights, including its design patent and trade dress rights, and that it filed the two lawsuits, relating to different styles of footwear, different trade dress rights, and, with the exception of the '325 Patent, different patents, cited in Paragraph 18 of the Second Amended Complaint. Except as expressly admitted herein, Rothy's denies the remaining allegations contained in Paragraph 18 of the Second Amended Complaint.

19.     Rothy's admits it sent the August 2 Letter regarding deliberate acts of copying, which Madden has not denied, and infringement and dilution of Rothy's trade dress in The Point, as well as infringement of Rothy's '1,313, '4,313, and '325 Patents, but otherwise denies the remaining allegations contained in Paragraph 19 to the Second Amended Complaint.

20.     Rothy's denies the allegations contained in Paragraph 20 of the Second Amended Complaint.

21.     Rothy's lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Second Amended Complaint and, therefore, denies them.

## FACTS

22.    Rothy's lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Second Amended Complaint and, therefore, denies them.

### Defendant's Design Patents

23.    Rothy's avers that the '1,313 Patent, the '4,313 Patent, and the '325 Patent speak for themselves regarding their respective claimed subject matter, but otherwise denies the allegations contained in Paragraph 23 of the Second Amended Complaint.

24.    Rothy's avers that the '1,313 Patent and the '4,313 Patent speak for themselves regarding their respective claimed subject matter, but otherwise denies the allegations contained in Paragraph 24 of the Second Amended Complaint.

25.    Rothy's avers that the '325 Patent speaks for itself regarding its claimed subject matter, but otherwise denies the allegations contained in Paragraph 25 of the Second Amended Complaint.

26.    Rothy's denies the allegations contained in Paragraph 26 of the Second Amended Complaint.

### The Group 1 Patents

27.    Rothy's admits that what Madden has defined as the Group 1 Patents includes the '4,313 Patent and the '1,313 Patent, and avers that the '1,313 Patent and the '4,313 Patent speak for themselves regarding their respective claimed subject matter, but otherwise denies the allegations contained in Paragraph 27 of the Second Amended Complaint.

*The '4,313 Patent*

28.    Rothy's admits that, by way of assignment, it is the owner of all rights, title, and interest in and to the '4,313 Patent, that the '4,313 Patent was filed on September 6, 2018 and

6

issued on April 2, 2019, and avers that the '4,313 Patent was filed as a continuation of U.S. Application No. 29/622,877 (now the '1,313 Patent), which is a divisional application of U.S. Application No. 29/544,350 (now U.S. Patent No. D805,276), which is a continuation-in-part application of U.S. Application No. 29/512,404 (now U.S. Patent No. D768,366) filed on December 18, 2014, but otherwise denies the allegations contained in Paragraph 28 of the Second Amended Complaint.

29.     Rothy's admits that the '4,313 Patent claims protection over the "ornamental design for a portion of a shoe, as shown and described" in the '4,313 Patent, and avers that the '4,313 Patent speaks for itself regarding its claimed subject matter, but otherwise denies the allegations contained in Paragraph 29 of the Second Amended Complaint.

30.     Rothy's denies the allegations contained in Paragraph 30 of the Second Amended Complaint.

31.     Rothy's denies the allegations contained in Paragraph 31 of the Second Amended Complaint.

32.     Rothy's denies the allegations contained in Paragraph 32 of the Second Amended Complaint.

*The '1,313 Patent*

33.     Rothy's admits that, by way of assignment, it is the owner of all rights, title, and interest in and to the '1,313 Patent for an ornamental design entitled "Shoe," that the '1,313 Patent was filed on October 20, 2017 and issued on October 23, 2018, and avers that the '1,313 Patent was filed as a divisional application of U.S. Application No. 29/544,350 (now U.S. Patent No. D805,276), which is a continuation-in-part application of U.S. Application No. 29/512,404

(now U.S. Patent No. D768,366) filed on December 18, 2014, but otherwise denies the allegations contained in Paragraph 33 of the Second Amended Complaint.

34.     Rothy's admits that the '1,313 Patent claims protection over the "ornamental design for a shoe, as shown and described" in the '1,313 Patent, and avers the '1,313 Patent speaks for itself regarding its claimed subject matter, but otherwise denies the allegations contained in Paragraph 34 of the Second Amended Complaint.

35.     Rothy's avers that the '1,313 Patent speaks for itself regarding its claimed subject matter, and otherwise denies the allegations contained in Paragraph 35 of the Second Amended Complaint.

36.     Rothy's avers that the '1,313 Patent speaks for itself regarding its claimed subject matter, and otherwise denies the allegations contained in Paragraph 36 of the Second Amended Complaint.

### The '325 Patent

37.     Rothy's admits that, by way of assignment, it is the owner of the '325 Patent, that the '325 Patent was filed on October 17, 2017 and issued on October 23, 2018, that the '325 Patent was filed as a divisional application of U.S. Application No. 29/576,783 (now U.S. Patent No. D804,156), which is a divisional application of U.S. Application No. 29/512,404 (now U.S. Patent No. D768,366) filed on December 18, 2014, but otherwise denies the allegations contained in Paragraph 37 of the Second Amended Complaint.

38.     Rothy's admits the allegations in Paragraph 38 of the Second Amended Complaint, and avers that the '325 Patent speaks for itself regarding its claimed subject matter, but otherwise denies the allegations contained in Paragraph 38 of the Second Amended Complaint.

8

39.     Rothy's denies the allegations contained in Paragraph 39 of the Second Amended Complaint, and avers that Paragraph 39 of the Second Amended Complaint purports to show only Figs. 1 and 5 of the '325 Patent, but otherwise denies the allegations contained in Paragraph 39 of the Second Amended Complaint.

40.     Rothy's avers that the '325 Patent speaks for itself regarding its claimed subject matter, and otherwise denies the allegations contained in Paragraph 40 of the Second Amended Complaint.

41.     Rothy's admits that the description section of the '325 Patent states "[t]he Figures include a contrasting portion, which is designated to show that the portion can be any color, and in particular, a color different than the remaining portion of the shoe in the Figures," and further admits that Paragraph 41 of the Second Amended Complaint purports to show a transposed, annotated, excerpt of Figure 5 of the '325 Patent, but otherwise denies the allegations contained in Paragraph 41 of the Second Amended Complaint.

### The Dispute Over Madden's Rosy Flat Shoe

42.     Rothy's lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 42 of the Second Amended Complaint, and, accordingly, denies them.

43.     Rothy's admits that on August 2, 2019, counsel for Rothy's sent the August 2 Letter, and that a copy of the August 2 Letter purports to be attached to the Second Amended Complaint as Exhibit D, but otherwise denies the allegations contained in Paragraph 43 of the Second Amended Complaint.

44.     Rothy's admits that on August 2, 2019, counsel for Rothy's sent the August 2 Letter, and that a copy of the August 2 Letter purports to be attached to the Second Amended Complaint as Exhibit D. Rothy's further avers that the August 2 Letter speaks for itself regarding

9

its contents, and otherwise denies the allegations contained in Paragraph 44 of the Second Amended Complaint.

### Non-Infringement of the Asserted Patents

45.     Rothy's admits that the August 2 Letter details allegations that Madden's slavish copying of Rothy's The Point design infringes the '4,313 Patent and the '1,313 Patent, but otherwise denies the allegations contained in Paragraph 45 of the Second Amended Complaint.

46.     Rothy's denies the allegations contained in Paragraph 46 of the Second Amended Complaint.

47.     Paragraph 47 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 47 of the Second Amended Complaint.

48.     Rothy's admits that Paragraph 48 purports to show a transposed, annotated excerpt of Figure 5 of the '325 Patent, and avers that the '325 Patent speaks for itself regarding its claimed subject matter. Rothy's otherwise denies the remaining allegations contained in Paragraph 48 of the Second Amended Complaint.

49.     Rothy's denies the allegations contained in Paragraph 49 of the Second Amended Complaint.

50.     Rothy's admits that Exhibit E of the Second Amended Complaint purports to be a screenshot of webpages from Rothy's website, and that Rothy's has virtually marked The Point with the '4,313 Patent and the '1,313 Patent on its website at https://rothys.com/patents, but otherwise denies the allegations contained in Paragraph 50 of the Second Amended Complaint.

51.     Paragraph 51 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 51 of the Second Amended Complaint.

52.     Paragraph 52 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 52 of the Second Amended Complaint.

53.     Rothy's admits that a copy of its August 2 Letter purports to be attached to the Second Amended Complaint as Exhibit D. Rothy's further avers that the August 2 Letter speaks for itself regarding its contents, and otherwise denies the allegations contained in Paragraph 53 of the Second Amended Complaint.

54.     Rothy's denies the allegations contained in Paragraph 54 of the Second Amended Complaint.

55.     Rothy's denies the allegations contained in Paragraph 55 of the Second Amended Complaint.

56.     Rothy's denies the allegations contained in Paragraph 56 of the Second Amended Complaint.

57.     Rothy's denies the allegations contained in Paragraph 57 of the Second Amended Complaint.

58.     Rothy's denies the allegations contained in Paragraph 58 of the Second Amended Complaint, and avers that it has not to date asserted a claim regarding The Point Trade Dress in any litigation in the states of Virginia or California.

59.     Rothy's admits that it has brought lawsuits against JKM Technologies, LLC and Giesswein Walkwaren AG, avers that it has not asserted a claim regarding trade dress in and to The Point in prior lawsuits, but otherwise denies the remaining allegations contained in Paragraph 59 of the Second Amended Complaint.

11

60. Rothy's admits that the Rosy Flat has a pointed toe and pointed vamp as admitted by Madden in Paragraph 60 of the Second Amended Complaint, but otherwise denies the allegations contained in Paragraph 60 of the Second Amended Complaint.

61. Rothy's admits that the accused shoe in *Rothy's Inc. v. JKM Technologies, LLC et al.*, No. 3:18-CV-00067-MFU-JCH (W.D. Va., filed Aug. 16, 2018) has a rounded toe and pointed vamp, but otherwise denies the allegations contained in Paragraph 61 of the Second Amended Complaint, and avers that it has not asserted a claim regarding The Point trade dress in any prior lawsuits.

62. Rothy's denies the allegations contained in Paragraph 62 of the Second Amended Complaint, avers that there were two accused shoe models in *Rothy's Inc. v. Giesswein Walkwaren AG*, No. 3:19-CV-03071-JD (N.D. Cal., filed June 3, 2019), and avers that it has not asserted a claim regarding The Point trade dress in any prior lawsuits.

63. Rothy's denies the allegations contained in Paragraph 63 of the Second Amended Complaint.

64. Paragraph 64 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 64 of the Second Amended Complaint.

65. Rothy's denies the allegations in Paragraph 65 of the Second Amended Complaint.

66. Rothy's denies the allegations in Paragraph 66 of the Second Amended Complaint.

67.    Paragraph 67 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 67 of the Second Amended Complaint.

68.    Rothy's admits that sales of The Point to the public began in or about December 2015 in the United States, but otherwise denies the remaining allegations in Paragraph 68 of the Second Amended Complaint.

69.    Rothy's admits that its August 2 Letter cites numerous articles and unsolicited media coverage discussing its footwear products, and in particular, the notoriety and fame of The Point, but otherwise denies the remaining allegations in Paragraph 69 of the Second Amended Complaint.

70.    Paragraph 70 of the Second Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 70 of the Second Amended Complaint.

71.    Rothy's admits that it has made allegations that Madden's manufacture, use, sale, and offer for sale of its Rosy Flat infringe and dilute Rothy's trade dress in and to The Point, and infringe Rothy's '1,313, '4,313, and '325 Patents. The remaining allegations contained in Paragraph 71 of the Second Amended Complaint are conclusions of law to which no response is required. To the extent a response to the remaining allegations is required, Rothy's admits that an immediate, real, and justiciable controversy exists between Madden and Rothy's regarding the '4,313 Patent, the '1,313 Patent, and the '325 Patent, and that an immediate, real, and justiciable controversy exists between Madden and Rothy's regarding Rothy's trade dress rights in and to The Point, but otherwise denies the remaining allegations in Paragraph 71 of the Second Amended Complaint.

## COUNT I

### (Declaration That Madden Does Not Infringe the '325 Patent)

72.    Rothy's repeats, realleges, and incorporates by reference its responses to Paragraphs 1-71, above.

73.    Rothy's denies the allegations contained in Paragraph 73 of the Second Amended Complaint.

74.    Rothy's admits the allegations contained in Paragraph 74 of the Second Amended Complaint to the extent they describe the relief sought by Madden, but denies that Madden is entitled to any of the relief sought.

## COUNT II

### (Declaration That Madden Does Not Infringe the '4,313 Patent)

75.    Rothy's repeats, realleges, and incorporates by reference its responses to Paragraphs 1-74, above.

76.    Rothy's denies the allegations contained in Paragraph 76 of the Second Amended Complaint.

77.    Rothy's admits the allegations contained in Paragraph 77 of the Second Amended Complaint to the extent they describe the relief sought by Madden, but denies that Madden is entitled to any of the relief sought.

## COUNT III

### (Declaration That Madden Does Not Infringe the '1,313 Patent)

78.    Rothy's repeats, realleges, and incorporates by reference its responses to Paragraphs 1-77, above.

79.    Rothy's denies the allegations contained in Paragraph 79 of the Second Amended Complaint.

80. Rothy's admits the allegations contained in Paragraph 80 of the Second Amended Complaint to the extent they describe the relief sought by Madden, but denies that Madden is entitled to any of the relief sought.

## COUNT IV

### (Declaration That Defendant Lacks Protectable, Valid Trade Dress Rights in The Point Shoe Design)

81. Rothy's repeats, realleges, and incorporates by reference its responses to Paragraphs 1-80, above.

82. Rothy's denies the allegations contained in Paragraph 82 of the Second Amended Complaint.

83. Rothy's admits the allegations contained in Paragraph 83 of the Second Amended Complaint to the extent they describe the relief sought by Madden, but denies that Madden is entitled to any of the relief sought.

## COUNT V

### (Declaration That Madden Does Not Infringe Defendant's Purported Trade Dress Rights in The Point Shoe Design)

84. Rothy's repeats, realleges, and incorporates by reference its responses to Paragraphs 1-83, above.

85. Rothy's denies the allegations contained in Paragraph 85 of the Second Amended Complaint.

86. Rothy's admits the allegations contained in Paragraph 86 of the Second Amended Complaint to the extent they describe the relief sought by Madden, but denies that Madden is entitled to any of the relief sought.

15

## COUNT VI

### (False Patent Marking)
### (35 U.S.C. § 292)

87.     Rothy's repeats, realleges, and incorporates by reference its responses to Paragraphs 1-87, above.

88.     Rothy's admits that it has virtually marked The Point with the '4,313 Patent, the '1,313 Patent, and the '325 Patent on its website at https://rothys.com/patents, but otherwise denies the remaining allegations contained in Paragraph 88 of the Second Amended Complaint.

89.     The allegations contained in Paragraph 89 of the Second Amended Complaint are conclusions of law to which no response is required. To the extent a response is required, Rothy's denies the allegations contained in Paragraph 89 of the Second Amended Complaint.

* * *

Madden's Wherefore Clause contains requests for relief to which no response is required. To the extent a response is required, Rothy's denies each and every allegation contained in the remainder of the Second Amended Complaint and denies that Madden is entitled to any of the relief requested in Madden's Wherefore Clause, or to any other relief as alleged in the Second Amended Complaint.

### JURY DEMAND

Rothy's joins in Madden's demand for a trial by jury on all issues so triable.

### GENERAL DENIAL

To the extent any allegation in the Second Amended Complaint has not been specifically admitted, it is hereby denied.

16

## AFFIRMATIVE DEFENSES

Rothy's asserts the following affirmative defenses based upon information presently available to it, and reserves the right to assert additional affirmative defenses or withdraw any of these affirmative defenses as further information becomes available through discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint fails to state a claim for which relief sought may be granted.

## SECOND AFFIRMATIVE DEFENSE

The Second Amended Complaint fails because it is barred by the equitable doctrine of unclean hands.

WHEREFORE, Rothy's respectfully requests:

A. Judgment dismissing with prejudice Steven Madden, Ltd.'s Second Amended Complaint for Declaratory Judgment;

B. That the Court enter judgment in favor of Rothy's; and

C. Such other and further relief as this Court may deem just and proper.

17

**ROTHY'S, INC.'S COUNTERCLAIMS AGAINST STEVEN MADDEN, LTD.
AND STEVEN MADDEN RETAIL, INC.**

1. Rothy's, Inc. ("Rothy's" or "Counterclaim Plaintiff") hereby asserts the following Counterclaims against Steven Madden, Ltd. and Steven Madden Retail, Inc. (individually and collectively, "Madden" or "Counterclaim Defendant") for patent infringement arising under the Patent Act, 35 U.S.C. §§ 1, *et seq.*; trade dress infringement, unfair competition, and dilution arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*; and common law unfair competition, and unfair trade practices arising under the laws of the state of California, Cal. Bus. Prof. Code §§ 17200, *et seq.* All of the aforementioned acts have been done willfully and with the deliberate intent of misappropriating the goodwill earned by Rothy's through its efforts.

2. Rothy's incorporates by reference Paragraphs 1-89 of its Amended Answer, and its Affirmative Defenses, into these Counterclaims.

3. Rothy's seeks, among other things, permanent injunctive relief to stop Madden from infringing its design patents and trade dress; damages and/or restitution of Madden's profits from its infringing activities; prejudgment interest; costs and attorneys' fees; and all other relief the Court deems just and proper.

## NATURE OF THE ACTION

4. Rothy's brings this action to stop yet another instance in Madden's pattern of slavishly infringing intellectual property rights of its competitors.

5. Rothy's (formerly known as CABH Holdings, LLC) was founded in San Francisco in 2012 and has what Business Insider describes as a "ravenous following" for its unique, novel, sustainable, comfortable, and stylish shoes. Rothy's footwear originally became known for being elegantly designed and seamlessly manufactured from recycled bottles using a

proprietary 3D knitting process. Rothy's has repurposed more than 39 million plastic bottles since its founding.

6.     Rothy's creative achievements have resulted in broad intellectual property protection for Rothy's innovations, including design patents, trademarks, and trade dress protection. Nevertheless, Rothy's innovations have been the subject of copycats seeking to capitalize on Rothy's success by copying Rothy's innovative, distinctive product designs. One of the more notorious copyists is Madden, which recently introduced a stitch-for-stitch line of infringing shoes with a strikingly similar name — the Steven by Steve Madden Rosy Flat (the "Rosy Flat").

7.     Instead of pursuing independent product development, Madden has chosen to slavishly copy Rothy's product design in violation of Rothy's valuable intellectual property rights. As alleged in detail below, in an effort to unlawfully leverage the valuable goodwill Rothy's has developed through its innovation and significant investment, Madden blatantly copied the distinct, and protected, style and appearance of Rothy's footwear through willful patent and trade dress infringement, and unfairly competitive acts.

8.     As described in more detail below, Madden copied multiple design elements of Rothy's The Point,  the pointed-toe flat shoe model ("The Point") in order to create its Rosy Flat.

9.     Through this action Rothy's seeks to protect its valuable intellectual property by enjoining Madden's illegal conduct and obtaining compensation for Madden's infringement and acts of unfair competition.

10.     As many intellectual property holders have before — including in at least six lawsuits concerning  Madden's copying of its competitors footwear since 2015 — Rothy's seeks to put an end to Madden's blatant intellectual property infringement. *See, e.g.*, *Allbirds,*

19

*Inc. v. Steve Madden, Ltd.*, No. 5:17-CV-07067-EJD (N.D. Cal. filed Dec. 12, 2017); *AirWair Int'l Ltd. v. Steven Madden, Ltd.*, No. 3:17-CV-01024-SI (N.D. Cal. filed Feb. 28, 2017); *Aquazzura Italia SRL v. Steve Madden Ltd.*, No. 1:16-CV-04905-DLC (S.D.N.Y. filed June 23, 2016); *Skechers U.S.A., Inc. v. Steven Madden Ltd.*, No. 2:15-CV-05123-JAK-FFM (C.D. Cal. filed July 7, 2015).

## PARTIES

11.    Rothy's is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 807 Montgomery Street, San Francisco, California 94133.

12.    On information and belief, Steven Madden, Ltd. is a corporation duly organized and existing by virtue of the laws of Delaware and maintains its principal place of business at 52-16 Barnett Avenue, Long Island City, New York 11104.

13.    On information and belief, Steven Madden Retail, Inc. is a corporation duly organized and existing by virtue of the laws of Delaware and maintains its principal place of business at 52-16 Barnett Avenue, Long Island City, New York 11104.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over these counterclaims under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

15.    This Court has personal jurisdiction over Steven Madden, Ltd. based on the Complaint for Declaratory Judgment Steven Madden, Ltd. filed with this Court on August 12, 2019 (D.I. 1), as well as the Second Amended Complaint for Declaratory Judgment Madden

20

filed with this Court on November 4, 2019 (D.I. 19). This Court has personal jurisdiction over Steven Madden Retail, Inc., and also has personal jurisdiction over Steven Madden, Ltd., because, on information and belief, each entity is incorporated in the State of Delaware, and because, on information and belief, each entity has committed and continues to commit acts of infringement, and places infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of Delaware, including in this District. The acts of Steven Madden, Ltd. and Steven Madden Retail, Inc. have caused, and are continuing to cause, injury to Rothy's within this District.

16.     Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c) because each of Steven Madden, Ltd. and Steven Madden Retail, Inc. transacts business and offers for sale in this District products that infringe the Rothy's patents and trade dress, and is subject to personal jurisdiction in this District. In addition, venue is proper because Rothy's is incorporated in this District and Rothy's has suffered, and is continuing to suffer, harm in this District.

## FACTUAL ALLEGATIONS

### A.    Rothy's Brand and Rothy's The Point

17.     In 2012, Rothy's began the design and development of technology for its revolutionary, industry-changing shoe titled The Point, a pointed toe flat.

18.     On or about December 2015, The Point was released by Rothy's after more than three and one-half years of research and development and at great expense to Rothy's. Following its release, The Point quickly gained success in the market, generating revenue of more than $100 million to date, and earning a reputation with consumers for its design, comfortable fit, and lightweight and extremely attractive aesthetic. Rothy's has invested roughly 7 years and a vast amount of financial resources in the conception, design, intellectual property protection, manufacture, marketing and sales of its footwear products, including The Point.

21

19.     Rothy's footwear products, including The Point, are offered in a variety of patterns, and currently retail for $125 to $195 per pair. Sold out or difficult to find styles, sometimes referred to by consumers as "Rothy's Unicorns," are often resold by consumers on secondary markets, such as Poshmark and eBay, for much more than retail price.

20.     The Point has gained widespread recognition and commercial success. Indeed, as a result of Rothy's revolutionary design and its substantial research and promotional efforts, Rothy's The Point has received significant media attention from a variety of national and global media sources. News outlets have described The Point as "distinguishable" from the rest of the market "mostly by [its] V-shape vamp[] (shoemaking lingo for the part that stretches across the top of the toe)," and have noted other "selling points that have set them apart," including that the "uppers are knit in a single piece," that "they're made from yarn spun from recycled plastic water bottles," and that they're "machine-washable." Hilary George-Parkin, *How a shoe that looks like a sock became the working woman's obsession*, VOX (Sept. 4, 2019), https://www.vox.com/the-highlight/2019/8/28/20835577/rothys-allbirds-everlane-glove-ballet-flat-is-everywhere.

21.     As early as August 2016, other news outlets have praised Rothy's shoes as "not only . . . among the most politically correct shoes on our beleaguered planet, they are also adorable." Lynn Yaeger, *The Most Environmentally Friendly Shoes on the Planet Also Happen to Be the Cutest*, VOGUE (Aug. 17, 2016), https://www.vogue.com/article/rothys-shoes-chic-recycled-eco-friendly-flats/amp. "Rothy's ballet flats are elegant," which has led to "the shoes hav[ing] amassed a loyal global clientele, many of whom can't stop talking about them online and off." Tariro Mzezewa, *What if Your Environmentally Correct Shoes Were Also Cute?*, NEW YORK TIMES (June 6, 2017), https://www.nytimes.com/2017/06/06/fashion/rothys-recycled-

plastic-bottle-shoes.html. And those "obsessed with Rothy's" proclaim that "not only are these shoes adorable, they're also eco-friendly."  Catherine DiBenedetto, *I Have Meghan Markle's Go-To Flats—And They Are the Most Comfortable Shoes I've Ever Owned*, HEALTH (Nov. 7, 2018), *available at* https://www.health.com/style/comfortable-flats-rothys.

22.     Indeed, Rothy's was founded with a mission to turn single use plastics into something both beautiful and useful, and environmental sustainability has been a central focus of Rothy's business from its inception. *See* https://rothys.com/sustainability. This focus on sustainability is not only important to Rothy's, but is important to its customers. *See, e.g.*, Shannon Fitzgerald, *How Sustainable Startup Rothy's Found Success Turning Recycled Water Bottles into Fashionable Footwear*, FORTUNE (Sept. 15, 2019), https://fortune.com/2019/09/15/sustainable-startup-rothys-eco-chelsea-boot-footwear/   ("The aesthetic and the sustainability story are intertwined and interdependent. The women who wear Rothy's enjoy the water bottle origin story of their shoe, that it telegraphs a message as innovative or responsible as you want, but they wouldn't wear them if they didn't love how they look.").

23.     The widespread consumer recognition and resulting secondary meaning acquired by Rothy's and The Point were recently recognized in *Forbes* magazine, which noted the "[o]bsessive Rothy's customers [that] wait in line outside the company's miniature Fillmore Street store and join a private Facebook group for self-described Rothy's addicts with nearly 14,000 members." Amy Feldman, *Next Billion-Dollar Startups: Rothy's Makes This Year's 'It' Shoe. But Can It Keep Growing Amid A Flood Of Copy Cats—And A Founder's Departure?*, FORBES (July 16, 2019), https://www.forbes.com/sites/amyfeldman/2019/07/16/rothys-shoes/#247d028c79d5.

24.    Celebrities, such as Meghan Markle, Katie Holmes, Ivanka Trump, Mandy Moore, Isla Fisher, Lupita Nyong'o, Natalie Portman, and Reese Witherspoon, have all been seen and/or photographed wearing Rothy's The Point on major social media platforms, such as Instagram, as well as in the press.

25.    Indeed, Meghan Markle's public appearance wearing The Point sparked its own flurry of widespread media coverage. This unsolicited attention catapulted the strength of the Rothy's brand and solidified the recognition of Rothy's The Point worldwide. *See* Alex Warner, *Meghan Markle Is Loving Her Rothy's Flats, Proving You Have Tons in Common*, PEOPLE (Oct. 18, 2018), https://people.com/style/meghan-markle-rothys-flats/ ("[Meghan Markle] brought along a pair of flats for long walks and strolls on the beach, and they're the same brand that everyone on your Instagram feed is already obsessed with: Rothy's. . . . The modern, pointed toe flats are the perfect classic black shoe that will go with any outfit."); Pahull Bains, *This Meghan Markle-Approved Shoe Brand Just Received $35m in Funding*, FASHION (Dec. 18, 2018), https://fashionmagazine.com/fashion/meghan-markle-rothys-social-media/ ("A couple of months ago, when the Duke and Duchess of Sussex were on their tour of Australia, Meghan Markle stepped out for an official engagement on the beach, swapping out her pumps for a pair of flats. In a matter of hours, those shoes—a sleek, pointy-toe pair of ballet flats—had been written about in just about every fashion magazine in existence (including ours)."); Rachel Bowie,  *Meghan Markle Wore Rothy's Shoes (Here's What It Did for the Brand Financially)*, PUREWOW (Mar. 8, 2019),    https://www.purewow.com/money/financial-impact-of-meghan-markle-wearing-rothys ("The day Meghan wore the Black Point, sales of the style rose four times. We also saw sales of other classic colors—marigold, persimmon and more—double. Same with our site traffic."); Aol.com Editors, *Meghan Markle is obsessed with her Rothy's, the $145 eco-friendly flats*, AOL

(Sept. 2, 2019), https://www.aol.com/article/lifestyle/2019/09/02/meghan-markle -is-obsessed-with-her-rothys-the-dollar145-eco-friendly-flats/23715485/?guccounter=1&guce_re ferrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAHr0olrQtc1Hk_9 99-a-udbwgZPbOioz1WG5YvklWqzAKsTyVw_ZBQky8yMb64TJRoCh1uu9WtOzqN1kg9Wt XwpadLCgfXNp4A3EOW-52ARFFjJ3gZ8y3PSJS6nOWCy1lJM8ZrhbrmaNE3rqEXNa5Dimxn 5pUcOT31i3D2Al1lCL ("Meghan's Rothy's debut during her royal tour of Australia in the fall of 2018 only contributed to its popularity. In fact, the brand asserts that it's seen a four times sales increase since the duchess wore its signature black pointed-toe pair on a South Melbourne beach.").

26.    Rothy's extensively advertises its footwear products, including The Point, nationally on well-known television channels such as ABC, AMC, CBS, CNN, Fox, NBC, and TNT. At this time, Rothy's television ads have had nearly 2 billion impressions, meaning, exposures to the ads, in all 50 states, as measured by Nielsen.

27.    Rothy's brand has built a strong and devoted fan base, including on social media, with its Facebook page having over 270,000 followers, its Instagram handle having over 250,000 followers, and numerous fan groups on Facebook having been created and joined by thousands of dedicated "super-fans," including, for example, Facebook groups named "Rothy's Addicts," "Rothy's Unicorn Collective," "Rothy's BST," and "Rothy's Buy/Sell/Trade and Chat."

28.    With Rothy's fame and recognition have come imitators creating knockoff and counterfeit products that infringe upon Rothy's intellectual property, including its design patent and trade dress rights in its footwear products. To counteract such infringing acts, Rothy's polices the market and enforces its intellectual property, including by sending cease and desist letters and, when necessary, filing lawsuits against third parties. Recently, in one such lawsuit, a

25

Consent Decree was entered enjoining the accused party from manufacturing, marketing, and selling the accused shoe after December 31, 2019, acknowledging the validity of Rothy's trade dress in and to its The Flat model and certain of its design patents, and providing for the accused parties to redesign the accused shoe. *See* Order, D.I. 80, *Rothy's Inc. v. JKM Techs., LLC*, No. 3:18-CV-00067-MFU-JCH (W.D. Va. Sept. 18, 2018).

**B.      Rothy's The Point Trade Dress**

29.      Rothy's The Point product has a unique and distinctive shape and design such that it is recognized by consumers of women's footwear, consisting of a combination of numerous nonfunctional elements evident upon seeing The Point ("The Point Trade Dress"), including the following as described and depicted below:

- Pointed toe flat;

- V-shaped vamp having three vertices;

- Knitted upper;

- Slim profile; and

- Sleek outsole.

30.    The Point Trade Dress, which is a composite of features, is  nonfunctional in its entirety, visually distinctive, and is unique in the footwear industry.

31.    The design of The Point Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of The Point. There are numerous alternative designs for footwear available that are equally feasible and efficient, none of which necessitates copying or imitating Rothy's The Point Trade Dress. Such alternative designs have been used by numerous other manufacturers of footwear in order to avoid using the combination of elements of The Point Trade Dress.

32.    The combination of features of The Point Trade Dress does not provide any significant non-reputational advantages to Rothy's or utilitarian advantages to the consumer, nor would the exclusive use of the aforesaid combination of features put Madden at a significant non-reputation-related disadvantage. The Point Trade Dress reflects a series of artistic, arbitrary design choices that create an overall look and feel that consumers identify as a shoe made by Rothy's. Put otherwise, the combination of features of The Point Trade Dress serves only to render Rothy's The Point, which embodies The Point Trade Dress, as distinct and recognizable as goods originating from Rothy's.

33.    The Point Trade Dress has achieved a high degree of consumer recognition and secondary meaning through Rothy's widespread use, sale, advertising, and promotion of The Point Trade Dress, and as such, is distinctive and serves to identify Rothy's as the source of footwear embodying said trade dress, namely, The Point.

34.    Rothy's products, including those embodying The Point Trade Dress, are sold throughout the United States, primarily direct-to-consumer by Rothy's itself via retail locations

27

and on the Rothy's website. Rothy's also periodically sells to consumers through third-party retail outlets, such as Nordstrom.

35.    Rothy's also extensively advertises The Point Trade Dress on social media, including by encouraging consumers to post images of The Point with the hashtag "#rothysinthewild." To date, over 16,000 photos have been posted to Instagram using the hashtag "#rothysinthewild," and over 32,000 photos have been posted to Instagram using the hashtag "#rothys." Below are exemplary Instagram posts from consumers that used the hashtags "#rothysinthewild" and "#rothys" while posting pictures to Instagram featuring The Point.



28

36.     Rothy's has spent tens of millions in connection with its marketing, advertising, and promotion of The Point, which embodies The Point Trade Dress, in the United States.

37.     As noted above, Rothy's has made substantial sales of its The Point, which embodies The Point Trade Dress, in the United States.

38.     Through Rothy's continued and widespread commercial use and success of The Point Trade Dress, as well as its advertising, promotion, and publicity, the consuming public has come to recognize the design of The Point Trade Dress, which is nonfunctional and distinctive, and has come to associate it with a single source, namely, Rothy's.

39.     Given the fame and success of The Point Trade Dress, third parties have copied The Point Trade Dress in an effort to capitalize on the widespread consumer recognition and resulting secondary meaning acquired by Rothy's and its The Point. Rothy's has sought to stop such infringing sales by way of successful enforcement of its intellectual property, including its The Point Trade Dress and certain of its design patents.

40.     The Point Trade Dress qualifies as a famous trademark, as that term is used in 15 U.S.C. § 1125(c)(1), and such mark has been continuously used and never abandoned.

C.     **Rothy's Design Patents**

41.     By way of assignment, Rothy's is the owner of all rights, title and interest in and to United States Patent No. D831,313 (the "'1,313 Patent") for an ornamental design entitled "Shoe." The '1,313 Patent, a copy of which is attached hereto as Exhibit A, was duly issued on October 23, 2018, by the United States Patent and Trademark Office. Such right, title, and interest includes, without limitation, the right to sue and receive damages for past, present, and future patent infringement.

42.     By way of assignment, Rothy's is the owner of all rights, title and interest in and to United States Patent No. D844,313 (the "'4,313 Patent") for an ornamental design entitled

29

"Portion of a Shoe."  The '4,313 Patent, a copy of which is attached hereto as Exhibit B, was duly issued on April 2, 2019, by the United States Patent and Trademark Office. Such right, title, and interest includes, without limitation, the right to sue and receive damages for past, present, and future patent infringement.

43.    By way of assignment, Rothy's is the owner of all rights, title and interest in and to United States Patent No. D831,325 (the "'325 Patent") for an ornamental design entitled "Shoe."  The '325 Patent, a copy of which is attached hereto as Exhibit C, was duly issued on October 23, 2018, by the United States Patent and Trademark Office. Such right, title, and interest includes, without limitation, the right to sue and receive damages for past, present, and future patent infringement.

44.    By way of assignment, Rothy's is the owner of all rights, title and interest in and to United States Patent No. D866,943 (the "'943 Patent") (collectively, with the '1,313 Patent, '4,313 Patent, and '325 Patent, the "Rothy's Asserted Design Patents") for an ornamental design entitled "Portion of a Shoe."  The '943 Patent, a copy of which is attached hereto as Exhibit D, was duly issued on November 19, 2019, by the United States Patent and Trademark Office. Such right, title, and interest includes, without limitation, the right to sue and receive damages for past, present, and future patent infringement.

**D.    Madden's Infringement of the Rothy's Asserted Design Patents and The Point Trade Dress**

45.    On information and belief, Madden is also engaged in the design, distribution, marketing, and sale of footwear. Madden's retail stores are located nationwide, including within this judicial district. Madden's products can also be purchased from various third-party retail outlets, including www.nordstromrack.com, as well as on Madden's official website, www.stevemadden.com.

46.     On information and belief, with knowledge of the '1,313 Patent, the '4,313 Patent, and the '325 Patent, Madden began reviewing, researching and copying the product that embodied the ornamental designs covered by these patents.

47.     On information and belief, with Rothy's The Point model in hand, Madden copied The Point Trade Dress.

48.     On information and belief, on or about June or July, 2019, Madden began offering for sale a product entitled the "Steven by Steve Madden Rosy Flat" (the "Rosy Flat"), a shoe with a shape, design and look that is virtually identical to The Point Trade Dress and the embodied ornamental designs covered by the Rothy's Asserted Design Patents.

49.     The Rosy Flat, sold or offered for sale by Madden, has an overall appearance that is confusingly similar and substantially the same in the eyes of an ordinary observer, in view of the prior art, as the designs claimed in the Rothy's Asserted Design Patents as demonstrated by the side-by-side comparisons below, and therefore infringes Rothy's patented and distinctive designs:



| Rothy's Asserted Design Patents | | | |
|---|---|---|---|

U.S. Patent No. D844,313

U.S. Patent No. D831,313

U.S. Patent No. D831,325

U.S. Patent No. D866,943

| Rothy's The Point | Madden's Rosy Flat |
|---|---|

| Rothy's The Point | Madden's Rosy Flat |
|---|---|
|  | |

| Rothy's Asserted Design Patents |
|---|



U.S. Patent No. D844,313     U.S. Patent No. D831,313     U.S. Patent No. D831,325     U.S. Patent No. D866,943

| Rothy's The Point | Madden's Rosy Flat |
|---|---|
|  | |

50.     On or about July 30, 2019, Rothy's obtained a pair of the Rosy Flat from a Nordstrom Rack retail location in New York City.

51.     The Rosy Flat, sold or offered for sale by Madden, has an overall appearance that is confusingly similar and substantially the same as The Point Trade Dress, as demonstrated by the side-by-side comparison below, wherein the pictures shown of the Rosy Flat are of the purchased pair referenced in Paragraph 50:

| Rothy's The Point | Madden's Rosy Flat |
|---|---|



| Rothy's The Point | Madden's Rosy Flat |
|---|---|
|  | |

52.     When worn, The Point and Rosy Flat are indistinguishable as demonstrated by the

side-by-side comparison below, wherein the pictures shown of the Rosy Flat are of the purchased

pair referenced in Paragraph 50.

| Rothy's The Point | Madden's Rosy Flat |
|---|---|

53.    On information and belief, the similarity between the two products is so striking that consumers seeing The Point and Rosy Flat products, either at point of purchase or thereafter, have been and will continue to be actually confused into thinking that the Rosy Flat product is related to Rothy's. As such, ordinary consumers are likely to be confused as to the source, sponsorship, affiliation, or approval relating to the Rosy Flat product vis-à-vis Rothy's and Rothy's The Point.

54.    Actual consumer confusion in the marketplace is occurring; specifically, consumers are confused as to the source, sponsorship, affiliation, or approval of the Rosy Flat with respect to Rothy's, and consumers have acknowledged the Rosy Flat's striking resemblance to Rothy's The Point.

55.    For example, in a closed Facebook group titled "Rothy's Addicts," https://www.facebook.com/groups/338231236698395/, on July 30, 2019, a Facebook user started a comment thread with a post that stated "[s]ome pics of the Steve Madden rothys [sic] knockoffs I saw at Nordstrom Rack."  The July 30, 2019 post included photographs of the Rosy Flat, as shown below ("Rosy Flat Comment Thread Ex. 1"):



*(Screenshot taken Sept. 6, 2019 - Image blurred to conceal identity)*

56.     Rosy Flat Comment Thread Ex. 1 also includes the following comments from other Facebook users, who were responding directly and indirectly to the initial July 30, 2019 post:





*(Screenshots taken Sept. 6, 2019 - Images blurred to conceal identities)*

57.     Customers also expressed concern that the Rosy Flat was not environmentally friendly.



*(Screenshots taken Sept. 23, 2019 - Image blurred to conceal identities)*

58.     In another example, in the same Facebook group titled "Rothy's Addicts," on August 28, 2019, a Facebook user started a comment thread with a post that referenced the Rosy Flat as "[t]he Steve Madden look alike."  The August 28, 2019 post also included a photograph of the Rosy Flat next to The Point, as shown below ("Rosy Flat Comment Thread Ex. 2"):



*(Screenshot taken Sept. 6, 2019 - Image blurred to conceal identity)*

59.    Rosy Flat Comment Thread Ex. 2 includes the following comments from other

Facebook users, who were responding directly or indirectly to the initial August 28, 2019 post:







*(Screenshots taken Sept. 6, 2019 - Images blurred to conceal identities)*

60.    In another example, in the same Facebook group titled "Rothy's Addicts," on August 8, 2019, a Facebook user started a comment thread with a post that referenced the Rosy Flat as the "Steve Madden Rothy's clone point," and stated they were "VERY poor quality knockoffs," as shown below:



*(Screenshot taken Sept. 6, 2019 - Image blurred to conceal identities)*

61.     In another example, in the same Facebook group titled "Rothy's Addicts," on July 30, 2019, a Facebook user started a comment thread with a post that referenced the Rosy Flat as "shoes that look like Rothys [sic]," as shown below:



*(Screenshot taken Sept. 6, 2019 - Image blurred to conceal identity)*

62.     In another example, on the product listing page for the Rosy Flat on third party retailer Nordstrom Rack's website,[1] a reviewer stated that the Rosy Flat is a "[g]reat alternative to Rothys [sic]," as shown below:



*(Screenshot taken Sept. 6, 2019)*

63.     Rothy's has not granted a license or any other form of permission to Madden with respect to any of its trade dress, design patents, or other intellectual property.

64.     In accordance with 35 U.S.C. § 287(a), Rothy's virtually marks its The Point, and, on information and belief, it has done so since before Madden began selling its Rosy Flat.

---

[1] https://www.nordstromrack.com/shop/product/2954067/steven-by-steve-madden-rosy-flat?color=BLACK.

65.     On August 2, 2019, Rothy's sent, via FedEx and E-mail, correspondence notifying Madden of their infringement of the '1,313 Patent, the '4,313 Patent, and the '325 Patent, and Rothy's "trade dress rights in Rothy's 'The Point.'"  A copy of this correspondence is attached hereto as Exhibit E.

66.     On August 6, 2019, Rothy's was notified via E-mail that Madden was "analyzing [Rothy's] claims and would be in a position to respond in the near future."

67.     On August 9, 2019, Rothy's, through its counsel, notified Madden via E-mail that the "matter is of high concern" and that it "would appreciate [Madden's] urgent attention to this matter and in any event no later than Tuesday, August 13, 2019."

68.     On August 12, 2019, without any additional response, Madden filed its initial Complaint for Declaratory Judgment filed with this Court.

69.     On information and belief, Madden had actual knowledge of the Rothy's Asserted Design Patents before it began selling its Rosy Flat.

70.     On information and belief, Madden, like the rest of the trade and relevant consuming public, was well aware of The Point Trade Dress, and of the goodwill represented and symbolized thereby.

71.     On information and belief, Madden is a competitor of Rothy's and has infringed the Rothy's Asserted Design Patents, and Rothy's The Point Trade Dress in an effort to exploit Rothy's reputation in the market and the goodwill it has built in its brand.

72.     On information and belief, Madden has gained profits by virtue of its sales of Rosy Flat products.

73.     On information and belief, consumers viewing the Rosy Flat have and will continue to confuse it with Rothy's The Point.

41

74.    On information and belief, the Rosy Flat product is, as compared to Rothy's The Point and as perceived by consumers, poorly constructed and of lesser quality.

75.    On information and belief, Madden's infringement has caused Rothy's to suffer harm, and as such, Rothy's is entitled to injunctive relief and damages.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. D831,313**
(35 U.S.C. §§ 271, *et seq.*)

76.    Rothy's incorporates and re-alleges the allegations contained in Paragraphs 1 through 75 of its Counterclaims above as though fully set forth below.

77.    Rothy's owns all rights, title, and interest in the '1,313 Patent.

78.    Madden, without authorization from Rothy's, has made, used, offered for sale, sold, and/or imported into or in the United States, and continues to make, use, offer for sale, sell, and/or import into or in the United States, the Rosy Flat product, which embodies the design covered by the '1,313 Patent.

79.    By the foregoing acts, Madden has infringed the '1,313 Patent literally or under the doctrine of equivalents in violation of 35 U.S.C. §§ 271, *et seq*.

80.    On information and belief, Madden had actual knowledge of the '1,313 Patent.

81.    On information and belief, Madden's infringement has caused Rothy's to suffer damages, and as such, Rothy's is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289.

82.    On information and belief, Madden has gained profits by virtue of its infringement of the '1,313 Patent. As such, Rothy's is entitled to Madden's profits under 35 U.S.C. § 289.

83.    On information and belief, Madden's infringement was and is willful, deliberate, malicious, and in bad faith, making this an exceptional case under 35 U.S.C. §§ 284 and 285. As a result, Rothy's is entitled to increased damages and attorneys' fees.

84.     On information and belief, Madden has caused irreparable damage and harm to Rothy's by its acts of infringement as described above and will continue said acts of infringement unless enjoined by this Court under 35 U.S.C. § 283.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. D844,313
(35 U.S.C. §§ 271, *et seq.*)

85.     Rothy's incorporates and re-alleges the allegations contained in Paragraphs 1 through 84 of its Counterclaims above as though fully set forth below.

86.     Rothy's owns all rights, title, and interest in the '4,313 Patent.

87.     Madden, without authorization from Rothy's, has made, used, offered for sale, sold, and/or imported into or in the United States, and continues to make, use, offer for sale, sell, and/or import into or in the United States, the Rosy Flat product, which embodies the design covered by the '4,313 Patent.

88.     By the foregoing acts, Madden has infringed the '4,313 Patent literally or under the doctrine of equivalents in violation of 35 U.S.C. §§ 271, *et seq*.

89.     On information and belief, Madden had actual knowledge of the '4,313 Patent.

90.     On information and belief, Madden's infringement has caused Rothy's to suffer damages, and as such, Rothy's is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289.

91.     On information and belief, Madden has gained profits by virtue of its infringement of the '4,313 Patent. As such, Rothy's is entitled to Madden's profits under 35 U.S.C. § 289.

92.     On information and belief, Madden's infringement was and is willful, deliberate, malicious, and in bad faith, making this an exceptional case under 35 U.S.C. §§ 284 and 285. As a result, Rothy's is entitled to increased damages and attorneys' fees.

93.    On information and belief, Madden has caused irreparable damage and harm to Rothy's by its acts of infringement as described above and will continue said acts of infringement unless enjoined by this Court under 35 U.S.C. § 283.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. D831,325**
(35 U.S.C. §§ 271, *et seq.*)

94.    Rothy's incorporates and re-alleges the allegations contained in Paragraphs 1 through 93 of its Counterclaims above as though fully set forth below.

95.    Rothy's owns all rights, title, and interest in the '325 Patent.

96.    Madden, without authorization from Rothy's, has made, used, offered for sale, sold, and/or imported into or in the United States, and continues to make, use, offer for sale, sell, and/or import into or in the United States, the Rosy Flat product, which embodies the design covered by the '325 Patent.

97.    By the foregoing acts, Madden has infringed the '325 Patent literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271, *et seq.*

98.    On information and belief, Madden had actual knowledge of the '325 Patent.

99.    On information and belief, Madden's infringement has caused Rothy's to suffer damages, and as such, Rothy's is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289.

100.    On information and belief, Madden has gained profits by virtue of its infringement of the '325 Patent. As such, Rothy's is entitled to Madden's profits under 35 U.S.C. § 289.

101.    On information and belief, Madden's infringement was and is willful, deliberate, malicious, and in bad faith, making this an exceptional case under 35 U.S.C. §§ 284 and 285. As a result, Rothy's is entitled to increased damages and attorneys' fees.

44

102.    On information and belief, Madden has caused irreparable damage and harm to Rothy's by its acts of infringement as described above and will continue said acts of infringement unless enjoined by this Court under 35 U.S.C. § 283.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. D866,943
(35 U.S.C. §§ 271, *et seq.*)

103.    Rothy's incorporates and re-alleges the allegations contained in Paragraphs 1 through 102 of its Counterclaims above as though fully set forth below.

104.    Rothy's owns all rights, title, and interest in the '943 Patent.

105.    Madden, without authorization from Rothy's, has made, used, offered for sale, sold, and/or imported into or in the United States, and continues to make, use, offer for sale, sell, and/or import into or in the United States, the Rosy Flat product, which embodies the design covered by the '943 Patent.

106.    By the foregoing acts, Madden has infringed the '943 Patent literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271, *et seq.*

107.    On information and belief, Madden's infringement has caused Rothy's to suffer damages, and as such, Rothy's is entitled to damages pursuant to 35 U.S.C. §§ 284 and 289.

108.    On information and belief, Madden has gained profits by virtue of its infringement of the '943 Patent. As such, Rothy's is entitled to Madden's profits under 35 U.S.C. § 289.

## COUNT V
## INFRINGEMENT OF ROTHY'S THE POINT TRADE DRESS
(15 U.S.C. § 1125(a))

109.    Rothy's incorporates and re-alleges the allegations contained in Paragraphs 1 through 108 of its Counterclaims above as though fully set forth below.

110. Rothy's is the owner of The Point Trade Dress as described above.

111. The Point Trade Dress as described above is unique, distinctive, nonfunctional, and has achieved substantial secondary meaning and goodwill in that it has come to be associated with Rothy's in the minds of consumers.

112. The design of The Point Trade Dress is neither essential to its use or purpose nor does it affect the cost or quality of the shoe. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating The Point Trade Dress. The aforesaid combination of features provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render Rothy's The Point distinct and recognizable as goods originating from Rothy's.

113. As such, Rothy's The Point Trade Dress constitutes protectable trade dress pursuant to Section 43(a) of the Lanham Act.

114. Rothy's The Point, which embodies The Point Trade Dress, is an extremely popular model among the relevant consumers and has been widely marketed, offered for sale, and sold by Rothy's online and in brick and mortar stores. On information and belief, Madden has marketed, offered for sale, and sold the Rosy Flat to the identical group of consumers as Rothy's via similar channels of trade as Rothy's.

115. The shape, design, and look of Madden's Rosy Flat are confusingly similar to The Point Trade Dress, and incorporate the distinctive features of The Point Trade Dress. Therefore, the marketing and sale of the Rosy Flat constitute the use in commerce of false designations of origin; false, or misleading descriptions; or representations that are likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Rosy Flat or its affiliation, connection, or association with Rothy's, or Rothy's sponsorship or approval of the Rosy Flat.

116.    Madden's manufacture, marketing, and sale of the Rosy Flat, which copies The Point Trade Dress, enable and have already enabled Madden to freeride on Rothy's reputation and goodwill built into The Point Trade Dress.

117.    As such, Madden's acts constitute trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

118.    On information and belief, Madden was aware of The Point Trade Dress at the time the Rosy Flat was conceptualized, designed, manufactured, offered for sale and/or sold. Accordingly, Madden's infringement as described above is deliberate, willful, and in bad faith, making this an exceptional case under 15 U.S.C. § 1117. As such, Rothy's is entitled to an award of its actual damages, Madden's profits, enhanced and exemplary damages, including treble its actual damages, an award of costs, destruction of the Rosy Flat, and, as this is an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

119.    Madden's acts of infringement have caused both irreparable harm and monetary damage to Rothy's, and unless enjoined and restrained, will cause further irreparable harm, leaving Rothy's with no adequate remedy at law.

## COUNT VI
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION
(15 U.S.C. § 1125(a))

120.    Rothy's repeats and re-alleges the allegations contained in Paragraphs 1 through 119 of its Counterclaims above as though fully set forth below.

121.    Madden's acts, as described above, are likely to cause confusion or mistake or to deceive consumers as to the affiliation, connection, or association of Madden with Rothy's, or as to the origin, sponsorship, or approval of the Rosy Flat by Rothy's in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

122.    Madden's acts, as described above, enable Madden to benefit unfairly from Rothy's reputation and success, and the goodwill and reputation associated with The Point Trade Dress. On information and belief, Madden's acts of unfair competition, as described above, are deliberate and willful, and undertaken with the intent to misappropriate the goodwill and reputation associated with The Point Trade Dress.

123.    Madden's acts as described above have caused both irreparable harm and monetary damage to Rothy's, and unless enjoined and restrained, will cause further irreparable harm, leaving Rothy's with no adequate remedy at law. By the foregoing acts, Madden has deceived and confused members of the public, and is likely to continue to do so unless restrained and enjoined by this Court.

## COUNT VII
## FEDERAL TRADEMARK DILUTION
(15 U.S.C. § 1125(c))

124.    Rothy's repeats and re-alleges the allegations contained in Paragraphs 1 through 123 of its Counterclaims above as though fully set forth below.

125.    The Point Trade Dress is distinctive and famous in the United States.

126.    The Point Trade Dress was famous when Madden copied and began using The Point Trade Dress in interstate commerce on, for, and/or in connection with the manufacture, distribution, advertising, marketing, promotion, offering for sale, and/or sale of the Rosy Flat.

127.    On information and belief, Madden acted with actual or constructive knowledge of the fame and reputation of The Point Trade Dress with the purpose of appropriating such rights and to willfully and intentionally confuse, mislead, and deceive consumers.

128.    Madden's actions have and are likely to dilute, blur, and tarnish the distinctive quality of The Point Trade Dress, such that its established selling power, value, and ability to

exclusively identify Rothy's as the source of The Point, will be whittled away, and/or have and are likely to dilute the reputation of the famous The Point Trade Dress, such that its established ability to indicate the superior quality of Rothy's The Point will be whittled away.

129.    Madden has made, and will continue to make, substantial profits and gain from its use of the famous The Point Trade Dress, to which Madden is not entitled at law or in equity.

130.    As such, Madden's acts constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

131.    Madden's acts as described above have caused both irreparable harm and monetary damage to Rothy's, and unless enjoined and restrained, will cause further irreparable harm, leaving Rothy's with no adequate remedy at law.

## COUNT VIII
## COMMON LAW UNFAIR COMPETITION

132.    Rothy's repeats and re-alleges the allegations contained in Paragraphs 1 through 131 of its Counterclaims above as though fully set forth below.

133.    Madden's acts, as described above, are likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Madden with Rothy's, or as to the origin, sponsorship, or approval of the Rosy Flat by Rothy's.

134.    On information and belief, Madden chose to use the design of the Rosy Flat with constructive and/or actual knowledge of Rothy's prior use of and rights in The Point Trade Dress. By adopting and using a colorable imitation of the valuable and distinctive The Point Trade Dress, Madden has been unjustly enriched and Rothy's has been damaged.

135.    By misappropriating and trading upon the goodwill and business reputation represented by The Point Trade Dress, Madden has been and, unless enjoined by this Court, will continue to be unjustly enriched at Rothy's expense.

49

136.    As such, Madden's acts constitute unfair competition under the common law of the State of Delaware and other states of the United States.

137.    Madden's acts as described above have caused both irreparable harm and monetary damage to Rothy's, and unless enjoined and restrained, will cause further irreparable harm, leaving Rothy's with no adequate remedy at law.

**COUNT IX**
**<u>UNFAIR COMPETITION</u>**
(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

138.    Rothy's repeats and re-alleges the allegations contained in Paragraphs 1 through 137 of its Counterclaims above as though fully set forth below.

139.    Madden's acts, as described above in regards to Counts V and VI, including the unlawful use and imitation of The Point Trade Dress in connection with the manufacture, marketing, distribution, and sale of the Rosy Flat, constitute unlawful and/or unfair business acts by creating a likelihood of confusion or a misunderstanding as to the affiliation, connection, or association of Madden with Rothy's, or as to the origin, sponsorship, or approval of the Rosy Flat by Rothy's.

140.    As such, Madden's acts are in violation of California's Unfair Competition Law, Calif. Bus. & Prof. Code §§ 17200, *et seq*.

141.    Madden's acts as described above have caused both irreparable harm and monetary damage to Rothy's, and unless enjoined and restrained, will cause further irreparable harm, leaving Rothy's with no adequate remedy at law.

142.    As a result of the conduct alleged herein, Madden has been unjustly enriched to Rothy's detriment. Rothy's therefore seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Madden's inequitable activities.

50

**PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, Rothy's prays for a judgment against Madden as follows:

1.      For a finding that U.S. Design Patent No. D831,313 is valid and enforceable;

2.      For a finding that Madden has infringed U.S. Design Patent No. D831,313, and that such infringement was willful;

3.      For a finding that U.S. Design Patent No. D844,313 is valid and enforceable;

4.      For a finding that Madden has infringed U.S. Design Patent No. D844,313, and that such infringement was willful;

5.      For a finding that U.S. Design Patent No. D831,325 is valid and enforceable;

6.      For a finding that Madden has infringed U.S. Design Patent No. D831,325, and that such infringement was willful;

7.      For a finding that U.S. Design Patent No. D866,943 is valid and enforceable;

8.      For a finding that Madden has infringed U.S. Design patent No. D866,943;

9.      For an award of damages to Rothy's against Madden for infringement of U.S. Design Patent No. D831,313, under 35 U.S.C. § 284;

10.     For an award of damages to Rothy's against Madden for infringement of U.S. Design Patent No. D844,313, under 35 U.S.C. § 284;

11.     For an award of damages to Rothy's against Madden for infringement of U.S. Design Patent No. D831,325, under 35 U.S.C. § 284;

12.     For an award of damages to Rothy's against Madden for infringement of U.S. Design Patent No. D866,943, under 35 U.S.C. § 284;

13.     In the event Rothy's elects to recover damages under 35 U.S.C. § 284, an increase of the sums awarded to Rothy's to three times the actual damages, pursuant to 35 U.S.C. § 284;

51

14. An award of damages to Rothy's against Madden under 35 U.S.C. § 289 in the amount of Madden's total profits for infringement of U.S. Design Patent No. D831,313;

15. An award of damages to Rothy's against Madden under 35 U.S.C. § 289 in the amount of Madden's total profits for infringement of U.S. Design Patent No. D844,313;

16. An award of damages to Rothy's against Madden under 35 U.S.C. § 289 in the amount of Madden's total profits for infringement of U.S. Design Patent No. D831,325;

17. An award of damages to Rothy's against Madden under 35 U.S.C. § 289 in the amount of Madden's total profits for infringement of U.S. Design Patent No. D866,943;

18. For an order that Madden, its agents, servants, officers, directors, employees, affiliates, attorneys, and all those acting in privity, active concert or participation with any of them, and their parents, subsidiaries, divisions, successors and assigns who receive actual notice of the order and judgment by personal service or otherwise, be enjoined from making, using and selling any product in violation of Rothy's U.S. Design Patent Nos. D831,313, D844,313, D831,325, and D866,943;

19. That this case be deemed as exceptional under 35 U.S.C. § 285 due to the intentional and willful infringement by Madden, and an award be made to Rothy's of its attorneys' fees under 35 U.S.C. § 285;

20. A finding that, by the acts complained of above, Madden has infringed The Point Trade Dress in violation of 15 U.S.C. § 1125(a), and that such infringement was willful;

21. A finding that, by the acts complained of above, Madden has diluted Rothy's famous The Point Trade Dress in violation of 15 U.S.C. § 1125(c);

22. A finding that, by the acts complained of above, Madden has engaged in unfair competition in violation of 15 U.S.C. § 1125(a);

52

23.     A finding that, by the acts complained of above, Madden has engaged in common law unfair competition;

24.     A finding that, by the acts complained of above, Madden has engaged in unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

25.     For Madden's profits from the sale of the Rosy Flat;

26.     For damages sustained by Rothy's, including on account of Madden's infringement of The Point Trade Dress, and that those damages be trebled pursuant to 15 U.S.C. § 1117(b);

27.     For a finding that this is an exceptional case and an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a);

28.     That Madden be ordered to pay Rothy's for damages it has sustained as a consequence of Madden's unfairly competitive acts;

29.     That Madden be ordered to recycle any remaining inventory of the Rosy Flat as well as any and all advertising and promotional materials, displays, marketing materials, web pages, and all other data or things relating to the Rosy Flat in compliance with 15 U.S.C. § 1118;

30.     For an order requiring Madden to turn over to Rothy's all tooling and other implements used to manufacture the Rosy Flat;

31.     For a permanent injunction pursuant to 15 U.S.C. § 1116;

32.     For an award of Rothy's costs, expenses, and interest, including pre-judgment interest, as provided for and by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a);

33.     For an award of pre-judgment and post-judgment interest on each and every monetary award to Rothy's; and

34.     Such other and further relief as the Court deems proper and just for Counts I-IX of these Counterclaims, or that Rothy's may be entitled to as a matter of law or equity.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

John M. Neukom
Caroline Van Ness
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
525 University Avenue
Palo Alto, CA  94301-1908
(650) 470-4500

Leslie A. Demers
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
4 Times Square
New York, NY  10036
(212) 735-3000

Michelle Mancino Marsh
ARENT FOX LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY  10019
(212) 484-3900

Dana J. Finberg
ARENT FOX LLP
55 Second Street, 21st Floor
San Francisco, CA  94105
(415) 757-5897

December 6, 2019

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Rothy's, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 6, 2019, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Michael J. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Douglas A. Miro, Esquire<br>Benjamin Charkow, Esquire<br>AMSTER, ROTHSTEIN & EBENSTEIN LLP<br>90 Park Avenue<br>New York, NY  10016<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Megan K. Bannigan, Esquire<br>David H. Bernstein, Esquire<br>Kathryn C. Saba, Esquire<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY  10022<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*

_____
Brian P. Egan (#6227)